HENRY MEANS v. THE STATE.

No. 8851.    Delivered April 15, 1925.

1.—Murder—Jury—Undue Influence of.

The appellant in this case, a negro charged with the murder of a white man, was convicted of murder, and his punishment assessed at ten years confinement in the penitentiary. It is claimed by appellant that the verdict of the jury was unduly influenced by a most unusual, if not unprecedented incident, which occurred while the jury were considering their verdict.

2.—Same—Continuance of Above.

After the case had been submitted, and the jury had retired to consider their verdict, and before an agreement had been reached, the sheriff, of the county, and one of his deputies while attempting to arrest a negro bootlegger, at the county seat, were fired upon by the negro, and in the general shooting which followed the deputy sheriff and the negro were killed, and the Sheriff wounded.

3.—Same—Continued.

After the shooting the body of the deputy sheriff, and the negro were brought into the court house yard a few feet from the jury room, where the jury in this case were deliberating, and laid in the yard in plain view of, the window of the jury room, where they were seen by a number, if not the entire jury. A large and excited crowd gathered in the court house yard, and excitedly discussed in the hearing of the jury, the killing of a deputy sheriff, and the wounding of the sheriff himself, expressing, of course, their indignation at the outrage.

4.—Same—Continuing Above.

In a motion for a new trial, appellant presented these facts, and averred that the incident unduly influenced the jury and verified his motion to the best of his information and belief. He also summoned all of the jury and offered to prove his averments by the jurors. The state filed a demurrer to his motion, which the court sustained, and refused to permit the jurors to testify. In proper bills of exceptions the matter is presented to us, for review.

(1)

5.—Same—Misconduct of Jury—How Established.

Where, in a motion for a new trial, an appellant sets out facts constituting such misconduct of the jury, which if true, as would entitle him to a new trial, and swears to the averments on information and belief, he should not be denied the privilege of introducing the jurors, or any number of them as witnesses on the issue, so made. Overruling Calyon v. State, 174 S. W. 591. Following Kannmacher v. State, 101 S. W. 238, Heffnarn v. State, 260 S. W. 198 and other cases cited.

Appeal from the District Court of Nacogdoches County. Tried below before the Hon. L. D. Guinn, Judge.

Appeal from a conviction of murder; penalty, ten years in the penitentiary.

The opinion states the case.

*Adams & Moore,* of Nacogdoches, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant, Henry Means, and Rho Means were charged jointly by indictment in the district court of Nacogdoches County with murdering Calvin Kinney by shooting him with a pistol, and appellant was convicted of murder on the 29th day of March, 1924, and his punishment assessed at ten years confinement in the penitentiary; from which conviction the defendant filed his motion for new trial, and brings this case before this court for review upon several alleged errors committed by the trial court.

From a careful inspection of the record in this case, it occurs to us that there is only one question presented which demands our attention, and that is the eight assignment of error set out in defendant's amended motion for new trial, wherein it is contended and alleged that the jury, after they had been charged by the court and retired to consider of their verdict, in effect received testimony out of the record and considered same, which is alleged as misconduct of the jury in said motion.

The record discloses by appellant's bill of exception No. "N" that the appellant was a negro, and charged with murdering a white man, and while the jury was out considering their verdict and before a verdict was reached, and while the jury was divided, and while the sheriff and his deputy were attempting the arrest of a negro bootlegger, the negro killed the deputy and wounded the sheriff and in the fight the negro was killed. The dead bodies of the deputy sheriff and the negro were brought and placed in the court house yard within about thirty-five feet of the jury room, within view and hearing of the jury, and that a large and boisterous crowd assembled around said bodies and the crowd was condemning

negroes killing white men and became so boisterous the deputy sheriff had to quiet them, and the jurors had their heads out of the window of the jury room witnessing and hearing the crowd, and afterwards returned a verdict of guilty into court.  The appellant summoned the jury, and in support of his motion for new trial proposed to prove that such conduct influenced the jury in rendering a verdict of guilty against him.

It will be observed from said bill that appellant made his affidavit to said motion for new trial to the portion of same complaining of the action of the jury, and in part stated "that the matters as set forth in said assignment were not cognizant to the defendant and are newly discovered evidence, discovered since the trial and conviction and that said assignment is true and correct to the best of my knowledge and belief."  The State demurred to said motion, attacking the sufficiency thereof,' and especially the affidavit of the appellant above mentioned, which demurrer, among other things, was "Because the said assignment is without merit, since it nowhere refers to or makes the affidavit of any person who was in position to know any misconduct of the jury, nor is there attached the affidavit of any person who was in position to know that there was any misconduct upon the part of the jury," and because said assignment was a direct attempt on the part of defendant to impeach the verdict of the jury and to go into the sanctity of the jury room and into the deliberations of the jury, without such predicates as the law requires in such matters, etc., and, further, because there is no affidavit which sets out any newly discovered evidence made by any witness who will testify to any newly discovered evidence.  The court sustained the demurrer of the State, as shown by said bill of exception, and it is to be inferred from the record as presented that it was upon the ground that the affidavit of the defendant was insufficient or that there was no affidavit of any juror attached to the motion, and that the law did not permit an inquiry of the kind orally, but limited such inquiry to affidavits.  It will be observed from said bill of exception that it is stated therein that the jury was undecided on a verdict at the time when the bodies of the deceased persons were placed within about thirty-five feet of the jury room and in view of the jury and that the jury could hear the demonstrations of the people assembled around the deceased persons and were viewing from the jury room the acts and conduct of the crowd there assembled, and that they thereafter returned into court a verdict of guilty, as above stated.  The bill also discloses that the appellant had the jury there ready to offer them as witnesses on the issue presented in his motion for new trial, and said bill shows: ·

"And the defendant was ready and had present the jury that tried the defendant and would have introduced testimony for the

court to have heard and considered the assignment of error as to whether or not there was any misconduct of the jury as alleged under said assignment, but the court as is shown above sustained the State's demurrer to said assignment of error No. 8 and refused to allow the defendant to put on and carry into this record evidence sustaining said assignment, in that the court was of the opinion that it was newly discovered and that as a basis for newly discovered evidence there would have to be attached to the motion an ex parte affidavit before evidence could be heard, and that the verification of the assignment by the defendant in his motion for a new trial was not sufficient.''

The bill further shows, as above set out, ''The defendant would have shown by the jury the exact transaction and as presented in his motion for a new trial, as the jury who tried the defendant were present and were proffered to the court, but the court on sustaining the State's demurrer refused to hear any testimony regarding assignment of error No. 8.'' This bill was approved by the court without qualification, and the record shows that it was filed within term time, as required by law.

The State's Attorney with this court has filed a brief in behalf of the State in which he questions the sufficiency of the affidavit of the appellant to said motion, and in support thereof cites the case of Calyon v. State, 174 S. W. 591, wherein Judge Prendergast held that an affidavit made by the defendant's attorney attacking the conduct of the jury and which affidavit was made by said attorney ''to the best of his knowledge and belief'' was insufficient, upon demurrer being made by the State to same, to authorize the court to summon the jury and hear oral evidence in support thereof. Judge Davidson, in the writer's opinion, wrote a dissenting opinion in that case which was unanswerable.

However, in the case of Kannmacher v. State, 101 S. W. 238, Judge Henderson, in rendering an opinion involved the same question that we have under consideration—that is, the sufficiency of the affidavit to a motion for new trial—used the following language:

''That the most that can be said of this proceeding is that appellant is informed and believes, and he only supports this information by the affidavit of May, which in itself is nullified by the affidavit of Murdock.''

He also uses the following language:

''It may have been practice formerly, when an attack was made on the integrity of a jury's verdict, to require testimony of jurors as to what occurred in the jury room, but that is no longer the rule. The statute itself seems to authorize such a proceeding. It reads as follows: 'A new trial will be granted where, from the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial, and it shall be com-

petent to prove such misconduct by the voluntary affidavit of a juror; and the verdict may in like manner in such cases be sustained by such affidavit.' Evidently, if the verdict can be impeached by the voluntary affidavit of a juror, it could be equally impeached, when the ground is laid for this impeachment, by requiring the twelve jurors to be sworn and testify in regard to the verdict, and this seems to have been the practice before the decision in the Jack case."

Also, he states:

"In such case, in the investigation of the question, the court will not be confined to the voluntary affidavits of jurors, but will compel them to testify"—citing numerous authorities.

In the case of Bonds v. State, 160 S. W. 100, there were attached to the motion for new trial the affidavits of two of the jurors who sat in the case, and all of the jurors were present in the court room when the motion was called for trial; and the State having filed contesting affidavits of some of the jurors, wherein the issue was sharply drawn as to what was done and said in the jury room, the trial court refused to permit the defendant to introduce the jurors orally on said motion and have them examined under oath, and the defendant in that case requested specially to put one of the jurors, who had made an affidavit before the district attorney, upon the stand and show that his affidavits showed only the parts favorable to the State, which the court refused to permit. Judge Harper in said opinion stated:

"With the record in this condition, we think the court should have permitted an oral examination of each and all the jurors. If the court had done so, and found as a fact that no such proceeding had taken place, we would have given great weight to his finding; but it appears he neither heard the evidence, nor permitted it to be adduced, that it might be incorporated in the record."

The case of Heffnarn v. State, 260 S. W. 198, is a case very similar to the instant case. In that case defendant's attorney asked for permission to have the jurors subpoenaed and brought into court to testify upon the hearing of the motion. The State controverted the motion and demurred to the sufficiency of its allegations as being too general and as not setting up that any juror was effected by the statements set out and as not stating facts showing that the verdict of the jury was influenced by such statements. The trial judge sustained the demurrer and denied the request of the defendant. Judge Lattimore, in rendering the opinion, says:

"The presence of jurors as witnesses, upon the hearing of a motion for new trial sought because of misconduct of the jury, may be of the utmost moment to one convicted of crime, and we have no doubt of his right to compulsory process for them such as is

guaranteed every accused person by our Bill of Rights. . . . If the motion set out the facts which transpired in the jury room, and be sworn to and such facts be sufficient to throw doubt on the fairness of the trial, and the court be properly requested to hear the facts or to grant process to bring before it the testimony, the court should by all means aid in arriving at that which is and should be the aim of all courts and court procedure, viz., the truth.''

In view of the decisions above cited, we are of the opinion that it should be the law to hear the testimony of the jurors orally, when an affidavit is attached to the motion as in the instant case, and that the case of Calyon v. State should not be followed. In motions of this kind, the jury's deliberations being secret, the very best that a defendant could do is to swear to the conduct of the jury to the best of his information and belief, as he is not presumed to know and could not know what took place in the jury room of his own personal knowledge and would of necessity have to base his affidavit in such cases upon information and belief; and we do not believe in good conscience the law would require him, where he had only such information, to make a positive and direct statement in the affidavit that the facts were true.

It is regrettable that the bodies of the dead men were placed in such proximity to the jury room, where the jury could actually see and hear what was going on during such excitement as is narrated in said bill, all of which would naturally tend to prejudice the minds of the jury against the defendant in this case. The record tends to show that same was done with no evil intent; nevertheless, it occurred, and same must, under the bill of exception as stated, have been hurtful to the appellant in this case.

We are therefore compelled to hold, after a very careful consideration of the entire record, that the action of the trial court was error, and the case should be reversed and remanded for a new trial, and it is accordingly so ordered.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.